**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JOHN DOE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-1059 |
| | § | |
| CATHOLIC SOCIETY OF RELIGIOUS | § | |
| and LITERARY EDUCATION, d/b/a, | § | |
| JESUITS OF THE NEW ORLEANS | § | |
| PROVINCE, *et al.,* | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

The plaintiff, John Doe, has sued Strake Jesuit College Preparatory, a Catholic high school in Houston.  Doe alleges that while he was a student at Strake Jesuit in the early 1980s, he was sexually assaulted by Glen Beeler, a lay faculty member who taught music and directed the school's jazz band.  Beeler is named as a defendant but has not been served.  Doe has also sued the Jesuits of the New Orleans Province, a regional organization of Jesuit priests, and the chief priest of the New Orleans Province, known as the Provincial (together, the "Provincial Defendants").  Doe asserts a variety of tort claims against Strake Jesuit and the Provincial Defendants, advancing theories of both direct and vicarious liability.  The claims include civil conspiracy, fraud, concealment, intentional infliction of emotional distress, breach of fiduciary duty, and gross and simple negligence.  The allegedly negligent acts include negligent hiring, negligent supervision, and negligent retention of Beeler.

The following motions are pending:

- The Provincial Defendants have moved for summary judgment, arguing that they had no legal control over Strake Jesuit's operation of the school and had no involvement in, or knowledge of, Beeler's employment.  (Docket Entry No. 18).  The Provincial Defendants argue that because they were unaware of Beeler, they had no reason to know of any risk that Beeler might be unfit to be a teacher.  Doe has responded to this motion.  (Docket Entry No. 24).  Doe has recently filed a supplemental response, (Docket Entry No. 57), to which the Provincial Defendants have replied, (Docket Entry No. 59).

- Strake Jesuit has also moved for summary judgment.  (Docket Entry No. 29).  It argues that Doe's claims are barred by the statute of limitations.  Strake Jesuit also contends that any vicarious liability claim fails because Beeler's alleged actions were outside the scope of his employment.  As to direct liability, Strake Jesuit asserts that it had no knowledge or reason to know of any improper acts by Beeler or any risk that he would molest students.  Doe has responded.  (Docket Entry No. 33).

- Doe has moved to compel the production of certain documents from Strake Jesuit and the Provincial Defendants or, in the alternative, to have this court inspect these documents *in camera*.  (Docket Entry No. 39).  Strake Jesuit and the Provincial Defendants have both responded.  (Docket Entry Nos. 49, 50).

- Strake Jesuit and the Provincial Defendants have jointly moved to stay discovery pending the resolution of the pending summary judgment motions and to modify the scheduling order accordingly.  (Docket Entry No. 48).  Doe has responded, (Docket Entry No. 56), and Strake Jesuit has replied, (Docket Entry No. 58).

• Doe has moved for reconsideration of this court's December 3, 2009 Memorandum and Order to the extent that it quashed the deposition of the current Provincial, the Very Rev. Mark A. Lewis. (Docket Entry No. 51). Strake Jesuit and the Provincial Defendants have responded. (Docket Entry Nos. 53, 54).

Based on the motions and responses, the summary judgment record, and the applicable law, this court grants both motions for summary judgment and denies the remaining motions as moot. Final judgment is entered by separate order. The reasons for these rulings are explained in detail below.

## I.    The Summary Judgment Record[1]

In the United States, members of the Society of Jesus, or Jesuits, are divided into ten regional Provinces. Each is governed by a Provincial Superior known as the Provincial. Houston is in the New Orleans Province, which includes Alabama, Arkansas, Florida, Georgia, Louisiana, Mississippi, New Mexico, South Carolina, Tennessee, and Texas. Since July 31, 2008, the Very Rev. Mark A. Lewis—one of the defendants in this case—has been the Provincial for the New Orleans Province. (Docket Entry No. 18, Ex. 1, Fitzgerald Aff., ¶¶ 4-6). The New Orleans Province

---

[1]  The summary judgment record includes: the April 24, 2009 declaration of New Orleans Province Provincial Assistant Rev. Raymond Fitzgerald, (Docket Entry No. 18, Ex. 1); an April 22, 2209 Certificate of Good Standing from the Louisiana Secretary of State for the Catholic Society of Religious and Literary Education, (*Id.*, Ex. 2); the September 24, 2007 Periodic Report filed by Strake Jesuit with the Texas Secretary of State, (*Id.*, Ex. 3); the sealed June 18, 2009 affidavit of Glen Beeler, (Docket Entry No. 33, Ex. 2); the sealed June 22, 2009 affidavit of the plaintiff's mother, (*Id.*, Ex. 3); the sealed 1980-81 Strake Jesuit Mothers' Club Directory, (*Id.*, Ex. 4); the sealed Williamson County District Attorney Offense Summary for Glen Beeler, (*Id.*, Ex. 5); the sealed Texas Department of Criminal Justice offense record for Glen Beeler, (*Id.*); the sealed June 10, 2009 declaration of Rev. Daniel Lahart, the President of Strake Jesuit, (Docket Entry No. 29, Ex. A); Strake Jesuit's sealed personnel file on Glen Beeler, (*Id.*, Ex. A, Attachment A); the plaintiff's sealed transcripts from Strake Jesuit, (*Id.*, Ex. A, Attachment B); the sealed May 22, 2009 declaration of Edgar Maresma, the former President of Strake Jesuit, (*Id.*, Ex. B); the May 14, 2009 affidavit of Patrick Wall, an expert witness retained by Doe, (Docket Entry No. 24, Ex. A); and the December 22, 2009 affidavit of Thomas Doyle, an expert witness retained by Doe, (Docket Entry No. 51, Ex. A).

3

operates through a Louisiana nonprofit corporation called the Catholic Society of Religious and Literary Education ("CSRLE").  (*Id.* at 2).

Providing education is central to the Jesuit mission.  A number of Jesuit colleges, universities, and secondary schools are located within the New Orleans Province.  One of these secondary schools is Strake Jesuit College Preparatory, located in Houston.  Strake Jesuit is a private school governed by a board of directors.  Neither the Provincial, a member of his staff, nor any officer or director of CSRLE sits on Strake Jesuit's board.  The Provincial Defendants do not own Strake Jesuit or the land on which it is located.  (*Id.* at ¶¶ 7-9).

Strake Jesuit's faculty consists of both Jesuit and lay teachers.  The Province has some involvement in assigning Jesuits to teach at schools such as Strake Jesuit.  The Province's Assistant for Secondary Education periodically contacts Strake Jesuit's principal to discuss the school's needs and Jesuits who might be available to meet those needs.  When the Province suggests a Jesuit, the principal determines whether that individual would be of value to the school.  According to Rev. Raymond Fitzgerald, the Province's second-highest ranking official, "[t]he ultimate decision of whether to hire [any] Jesuit belongs to and is made by Strake Jesuit."  (*Id.*, ¶ 10).  If the school accepts a Jesuit recommended by the Province, he is assigned to the school as his Jesuit mission but is hired as a Strake Jesuit employee.  Fitzgerald stated in his declaration that "[n]either the Provincial, the Province, nor CSRLE legally assigns any person to work at Strake Jesuit, directs Strake Jesuit on any employment matter, or has any right to force Strake Jesuit to accept a particular Jesuit."  (*Id.*, ¶¶ 11-12).  Fitzgerald explained that although the Province is involved in this limited fashion with Jesuits hired by Strake Jesuit, the Province has no involvement in the school's hiring

4

of non-Jesuit personnel.  According to Fitzgerald, the school handles all non-Jesuit employment matters without involving the Province, the Provincial, or CSRLE in any way.  (*Id.*, ¶ 13).

The plaintiff, John Doe, was a freshman at Strake Jesuit in 1981.  He alleges that during his freshman year, he was sexually assaulted by Glen Beeler.  The sexual assaults were allegedly repeated on a number of occasions until 1983, after Doe's junior year.

Beeler was not a Jesuit.  Strake Jesuit hired him as a lay teacher in January 1981.  Beeler was hired to teach Jazz Band, Stage Band, Music Appreciation, Introduction to Music and Advanced Jazz Band.  (Docket Entry No. 29, Ex. A, Attachment A).  According to Beeler, he was hired by Strake Jesuit "on recommendation by Father David Lawrence."  (Docket Entry No. 33, Ex. 2 at 2). Father Lawrence met Beeler at the home of one of his piano students who attended Strake Jesuit. (*Id.*).  Beeler applied for the position at Strake Jesuit by completing an employment application and questionnaire and submitting his college transcript and the Texas Teacher Certificate that provisionally certified him to teach music at all levels through high school.  (Docket Entry No. 29, Ex. A, Attachment A).  Beeler and the school principal, Vincent Orlando, signed an employment contract setting out Beeler's rights and responsibilities as a Strake Jesuit teacher.  (*Id.*).

Beginning in the spring semester of 1981,  Doe was enrolled in Beeler's jazz band class and played drums in the jazz band Beeler directed.  (Docket Entry No. 33, Ex. 4, Mother's Aff., ¶ 4). In her affidavit, Doe's mother stated that she and her husband also spent time with Beeler at Strake Jesuit.  Doe's parents "found that social interaction was encouraged between faculty and the parents. There was an active social life at the school which included the Jesuit priests, the Jesuit brothers, and the lay teachers, especially those who were not married with families." (*Id.*, ¶ 2).  Doe's parents "attended most of the jazz programs and would meet up with Glen Beeler after the programs when

the parents and students and the faculty would socialize over refreshments." (*Id.*, ¶4). Over the course of these interactions, Doe's parents "developed a level of comfort" with Beeler. (*Id.*). During the 1981-82 school year, Doe's parents arranged for Beeler to stay at their house as a "sitter" while they were away on "week-long or even shorter business trips" and to drive Doe back and forth to school. (*Id.*). Doe's parents "thought it would be an ideal arrangement for Glen Beeler to stay at our home—first, to drive [Doe] back and forth to school and second, for our younger boy to be under the wing of a jazz director where [Doe's] talents were being fostered and encouraged in an environment where [Doe] was excelling." (*Id.*). According to Beeler's affidavit, on two occasions he stayed overnight with Doe at his house while his parents were out of town. (Docket Entry No. 33, Ex. 2 at 1). Doe alleges that he also spent time at Beeler's residence beginning in the fall of 1981 through the spring of 1983. (Docket Entry No. 43, ¶ 12).

Doe alleges that Beeler began abusing him in the fall of 1981. The abuse began in Beeler's office at Strake Jesuit. (*Id.*). The other alleged instances of sexual abuse occurred either at Doe's home or at Beeler's residence. (*Id*). Doe alleges that Beeler would first give him alcohol to drink and then have him strip to his underwear and lie down. According to Doe, Beeler would massage him and then pull down his pants and "tickle" his genitals. (*Id.*). Doe alleges that the abuse continued until the spring of 1983.

It does not appear from the record that Beeler has admitted to these acts or been convicted of any criminal charges relating to them. In his affidavit, Beeler confirmed that he had stayed with Doe twice when the boy's parents were away, but Beeler neither admitted nor denied Doe's allegations of sexual abuse. (*Id.*). Strake Jesuit and the Provincial Defendants do not specifically dispute that these acts occurred. Rather, the defendants assert that they have no knowledge of any

inappropriate behavior by Beeler before, during, or after his employment at Strake Jesuit.  There is

no evidence in the record of any complaint, arrest, indictment, or conviction against Beeler before

he was hired by Strake Jesuit or during his employment with Strake Jesuit.

Beeler left Strake Jesuit voluntarily in June 1983.  On June 21 of that year, he sent a letter

to Vincent Orlando, then the school principal.  The letter stated in part as follows:

> This is to inform you that I will not be returning to Strake Jesuit in
> the Fall of this year.  During the past two and one half years, there
> have been many occasions for me that have made me enjoy my
> involvement with the Strake Jesuit community.  However, more and
> more increasingly of late, there have been many things that I have not
> enjoyed.
>
> My involvement with my church is becoming greater, and I am really
> leaning towards a full-time church position.  To do that, I would need
> to have time to return to school, which I am looking forward to in
> September.

(Docket Entry No. 29, Ex. A., Attachment A).

Edgar Maresma, a former Jesuit priest who was the president of Strake Jesuit during

Beeler's tenure there, provided a declaration.  He stated:

> To the best of my memory, before, during, and after the employment
> of Mr. Beeler, so long as I was at Strake Jesuit, I never heard of any
> complaint about Mr. Beeler in any way suggesting that he had
> engaged in any sexually inappropriate conduct or attempted any
> sexually inappropriate conduct or made any sexually inappropriate
> comments or that he had engaged in any activities with students
> involving alcohol or drugs.
>
> To the best of my memory, before during and after the employment
> of Mr. Beeler, so long as I was at Strake Jesuit, (1) Strake Jesuit had
> no knowledge of any complaint about Mr. Beeler in any way
> suggesting that he had engaged in sexually inappropriate conduct or
> attempted any sexually inappropriate conduct or made any sexually
> inappropriate comments or that he had engaged in any activities with
> students involving alcohol or drugs, and (2) Strake Jesuit had no
> knowledge of any fact suggesting that Mr. Beeler had engaged in

7

> sexually inappropriate conduct or attempted any sexually inappropriate conduct or made any sexually inappropriate comments or that he had engaged in any activities with students involving alcohol or drugs.  As President, I would have ben aware of any such complaints and I would have been aware of any such facts.

(Docket Entry No.29, Ex. B, Maresma Decl., ¶¶ 5-6).

After leaving Strake Jesuit, Beeler moved to the Austin area, where he taught for one year in the Lake Travis Independent School District then left to work for churches.  (Docket Entry No. 33, Ex. 2, Beeler Aff. at 1-2).  Years later, Beeler was convicted of multiple counts of indecency with a child.  The conviction was for acts that occurred in 1994 and after.  (*Id.*, Ex. 4).  These incidents apparently involved second-graders who were in classes Beeler taught.  The media covered the story of the first student to accuse Beeler of sexual misconduct, leading other students to come forward.  (*Id.*).  In his affidavit, Beeler stated that these incidents "involved boys younger than 10 years of age" and "consisted of my touching them in their genitals" usually but not always through their clothing.  (*Id.*, Ex. 2 at 1).  Beeler is currently an inmate in the Texas Department of Criminal Justice.

Doe alleges that as result of the sexual abuse, his life "continuously spiraled out of control." Doe alleges that because he was confused and traumatized by the abuse, he suppressed his memories of it until June of 2008.  At that point, his parents "painfully recalled and deliberately questioned the cycles of dysfunction" in his life, and Doe "began to talk to his parents about the numerous instances of sexual abuse by Beeler."  (Docket Entry No. 43, ¶ 12).

Doe filed this suit on February 20, 2009 in the Corpus Christi Division of the Southern District of Texas, naming Beeler and the Provincial Defendants as defendants.  (Docket Entry No. 1).  On March 29, 2009, Doe amended his complaint to add Strake Jesuit as a defendant.  (Docket

8

Entry No. 9).   The following month, on a motion by the Provincial Defendants, the case was transferred to the Houston Division of the Southern District of Texas.   (Docket Entry No. 16).

Doe's Second Amended Complaint, filed on December 3, 2009, asserts claims under Texas law.   (Docket Entry No. 43).   Doe alleges a civil conspiracy involving Beeler, Roman Catholic Church officials, the Provincial Defendants, and Strake Jesuit to conceal sexual abuse of children by Beeler and others.   (*Id.*, ¶¶ 24-29, 47).   Doe alleges that Strake Jesuit and the Provincial Defendants are vicariously liable for Beeler's alleged sexual assault under a theory of respondeat superior.   (*Id.*, ¶ 41).   Doe also asserts direct liability causes of action against Strake Jesuit and the Provincial Defendants arising out of their own negligence in assigning or employing Beeler for a position of trust, confidence, and authority, (*id.*, ¶ 32); failing to warn of Beeler's dangerous propensities, (*id.*, ¶ 33); failing to provide reasonable supervision over Beeler's activities with Strake Jesuit students, (*id.*, ¶ 34); failing to investigate "numerous notices that Beeler was a danger to minor boys," (*id.*); failing to remove Beeler from a position involving contact with minors, (*id.*); failing to implement reasonable policies and procedures to prevent Beeler from having unsupervised access to students, (*id.*, ¶ 36); failing to report Beeler as a suspected child abuser before and after he abused Doe, (*id.*, ¶ 37); failing to exercise reasonable care to protect Doe before 1981 from the foreseeable risk of sexual abuse by Beeler, (*id.*, ¶ 51); assuming the risk of intentional or criminal conduct (citing the *Restatement (Second) of Torts* § 302B) (*id.*, ¶ 35); and misrepresenting the risk of physical harm (citing the *Restatement (Second) of Torts* § 311), (*id.*, ¶ 44).   Finally, Doe asserts claims for fraud and concealment, (*id.*, ¶¶ 30-31, 39, 43, 45, 48-49),   intentional infliction of emotional distress, (*id.*, ¶¶ 38, 52), breach of fiduciary duty, (*id.*, ¶¶ 40, 50) and gross negligence, (*id.*, ¶¶ 45, 53).

9

On April 24, 2009, the Provincial Defendants moved for summary judgment, (Docket Entry No. 18), arguing that they cannot be held liable because they had no legal control over Beeler or over employment decisions involving lay faculty at Strake Jesuit. Doe has responded. (Docket Entry No. 24). After some discovery, on June 11, 2009, Strake Jesuit moved for summary judgment. (Docket Entry Nos. 28, 29). Strake Jesuit argues that Doe's claim is barred by limitations, that the school cannot be held vicariously liable for Beeler's alleged acts because they were not within the scope of his employment, and that the school cannot be held directly liable because it neither knew nor had reason to know of any risk that Beeler would sexually abuse a student. Doe has responded. (Docket Entry No. 33).

Both summary judgment motions are addressed below.

## II.    The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf*, *Inc. v. Nike*, *Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one

party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

The moving party bears a heavier burden when seeking summary judgment on a claim or defense on which it would bear the burden of proof at trial. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). "[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Id.* (emphasis in original); *see also Meecorp Capital Markets LLC v. Tex-Wave Industries LP*, 265 Fed. App'x 155, 157 (5th Cir. 2008) (per curiam) (unpublished) (quoting *Fontenot*, 790 F.2d at 1194).

III.    **Analysis**

The summary judgment motions raise three sets of issues.  The first set involves whether either Strake Jesuit or the Provincial Defendants can be held vicariously liable for Beeler's alleged abuse of Doe.  The second set requires this court to decide whether the defendants are subject to direct liability for any of their own acts or omissions, such as negligent hiring or negligent retention. The third set is whether Doe's claims are barred by limitations.  Strake Jesuit argues that the limitations period has expired and that Doe does not fall under any exception.  The Provincial Defendants have not raised limitations in their present motion but have stated that if they are unsuccessful, they will then move for summary judgment on the basis of limitations.

Each of the three sets of issues is considered in turn.

A.    **Vicarious Liability for Beeler's Alleged Abuse**

Doe has alleged that both Strake Jesuit and the Provincial Defendants are vicariously liable for Beeler's sexual abuse, under a theory of respondeat superior.  Both defendants seek summary judgment that they cannot be held vicariously liable because Beeler was not acting in the scope of his employment when he allegedly abused Doe.  The Provincial Defendants make the additional argument that they were not Beeler's employer.

Under Texas law, an employer will not be held vicariously liable for an employee's tort unless the employee commits the tort (1) within the scope of his employment, (2) in furtherance of the employer's business, and (3) to accomplish the object for which the employer hired the employee. *Minyard Food Stores v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002).  "[I]f an employee deviates from the performance of his duties for his own purposes, the employer is not responsible for what occurs during that deviation."  *Id.*

12

In a case involving allegations that a clergy member sexually abused parishioners, the Fifth Circuit rejected "the contention that [the priest] was acting within the scope of his employment." *Tichenor v. Roman Catholic Church of the Archdiocese of New Orleans*, 32 F.3d 953, 959 (5th Cir. 1994). The court observed that "[i]t would be hard to imagine a more difficult argument than that [the priest's] illicit sexual pursuits were somehow related to his duties as a priest or that they in any way furthered the interests of St. Rita's, his employer." *Id.* at 960. *Tichenor* involved Mississippi law, but Texas law is not materially different. *Compare id.* at 959 (describing the Mississippi rule) *with Goodman*, 80 S.W.3d at 577 (describing the Texas rule). In a case involving a seminarian who sexually abused children attending church functions, this court applied Texas law and held that the seminarian's "intentional torts cannot be imputed to the Archdiocese Defendants because his conduct was not, as a matter of law, related to his duties as a priest and did not further the interests of his employer." *See Doe I v. Roman Catholic Diocese of Galveston-Houston*, No.05-1047, slip op. at 8-9 (Mar. 27, 2006).

Texas law requires the same result here. There is no evidence that sexually abusing a student was part of Beeler's duties at Strake Jesuit. The evidence that Strake Jesuit encouraged its teachers to socialize with families of students outside school does not raise a fact issue as to whether sexually abusing the students was related to the job of teaching or furthered the school's interests. The conduct Doe alleges was wholly outside the scope of Beeler's employment and did not further either Strake Jesuit's or the Provincial Defendants' interests. Neither Strake Jesuit nor the Provincial Defendants can be held vicariously liable for Beeler's alleged sexual abuse.

In addition, the Provincial Defendants cannot be held vicariously liable because they were not Beeler's employer. There is no evidence that the Provincial Defendants had any involvement

13

in hiring Beeler or any right or ability to control Beeler's work.  The undisputed evidence shows that these defendants had no role in, or ability to control, Beeler's employment.  Rev. Raymond Fitzgerald, a top Province official, stated in his declaration that the Provincial Defendants have no involvement with the employment relationship between Strake Jesuit and non-Jesuit employees of the school.  Beeler was not and never has been a Jesuit.  According to Fitzgerald, "[n]either the Provincial, the Province, nor CSRLE has ever employed Mr. Beeler, nor did they hire or direct Strake Jesuit or anyone else to hire, fire, or take any other action with respect to the employment of Mr. Beeler.  The Provincial, the Province, and CSRLE have never had any right to control Mr. Beeler." (Docket Entry No. 18, Ex. 1, Fitzgerald Decl., ¶¶ 13-15).  The undisputed evidence shows that, as a matter of law, the Provincial Defendants could not have been Beeler's employer.[2]  *See Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002); *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513 (Tex. 2002).

As a matter of law, the defendants are not vicariously liable for Beeler's alleged sexual assault.  They are entitled to summary judgment on this claim.

## B.  Direct Liability

The remainder of Doe's claims are based on the alleged acts or omissions of Strake Jesuit or the Provincial Defendants, not on those defendants' vicarious responsibility for Beeler's actions. The direct liability causes of action include negligence, gross negligence, fraud and concealment, intentional infliction of emotional distress, breach of fiduciary duty, and civil conspiracy.  Each

---

[2] Doe argues, based on the testimony of his expert witnesses, that because the Provincial Defendants were responsible for the religious mission at the Jesuit schools within the province, they controlled Strake Jesuit and Beeler.  (Docket Entry No. 57).  This argument is unpersuasive.  There is no evidence that the Provincial Defendants controlled or had a right to control Strake Jesuit's operation or any aspect relating to its lay faculty.  Religious mission has no relevance to Strake Jesuit's employment of a non-Jesuit hired as a band teacher.

theory is considered below.

       *1.    Negligence*

In Texas, the elements of negligence are that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached the duty; and (3) the defendant's breach proximately caused injury to the plaintiff. *IHS Cedars Treatment Center v. Mason*, 143 S.W.3d 794, 798 (Tex. 2003). Doe alleges that the defendants breached their duties to him by:

- negligently assigning or employing Beeler for a position of trust, confidence, and authority;

- negligently failing to warn of Beeler's dangerous propensities despite knowledge and notice of these propensities;

- negligently failing to provide reasonable supervision of Beeler's activities with Strake Jesuit students;

- negligently failing to investigate "numerous notices that Beeler was a danger to minor boys";

- negligently failing to remove Beeler from a position involving contact with minors;

- negligently failing to implement reasonable policies and procedures to prevent Beeler from having unsupervised access to students;

- negligently failing to report Beeler as a suspected child abuser before and after his abusing Doe;

- negligently failing to exercise reasonable care to protect Doe before 1981 from the foreseeable risk of sexual abuse by Beeler;

- negligently assuming the risk of intentional or criminal conduct under the *Restatement (Second) of Torts* § 302B; and

- negligently misrepresenting the risk of physical harm under the *Restatement (Second) of*

15

*Torts* § 311.

(Docket Entry No. 43).

Generally, tort law imposes no duty to control the conduct of others.  Because of the special relationship between employers and employees, however, employers are, in some circumstances, required to exercise reasonable care to protect third parties from dangerous acts of an employee.  *Otis Engineering Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983).  "One who retains the services of another has a duty to investigate the background of that individual for fitness for the position, to remain knowledgeable of that fitness and is liable if another person is injured in some manner related to his employment because of a lack of fitness."  *Robertson v. Church of God, International*, 978 S.W.2d 120, 125 (Tex. App.—Tyler 1997, pet. denied) (citing, among other cases, *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472 (Tex.1995)) (emphasis removed).  As Beeler's employer, Strake Jesuit had a duty to exercise reasonable care to investigate his background for fitness for the position and to remain knowledgeable of that fitness.  As a school, Strake Jesuit also had a duty to protect Doe from foreseeable harm.  *See Godar v. Edwards*, 588 N.W.2d 701, 708 (Iowa 1999) ("The law charges school districts with the care and control of children and requires the school district to exercise the same standard of care toward the children that a parent of ordinary prudence would observe in comparable circumstances." (quotations omitted)).  Because the Provincial Defendants did not employ Beeler or own or operate Strake Jesuit, they had no duty to protect a third party from Beeler and cannot be liable for negligence.[3]

---

[3] Even if the Provincial Defendants did have a duty, it would be limited in the same manner as Strake Jesuit's duty; they would be required only to protect against reasonably foreseeable risks.  And there is no evidence in the record that the Provincial Defendants knew or had reason to that Beeler posed a threat or that he abused Doe.  The Provincial Defendants were not involved in hiring or other employment matters involving non-Jesuits.  The record does not even show that the Provincial Defendants knew that Beeler existed.

Strake Jesuit's duty is limited to protecting against reasonably foreseeable risks hiring Beeler presented.  Absent any evidence of a known or reasonably foreseeable risk, a defendant as a matter of law cannot be liable for negligently failing to take reasonable precautions to protect against that risk.[4]  *See, e.g., Greater Houston Transp. Co. v. Phillips*,  801 S.W.2d 523, 526-27 (Tex. 1990) (holding that a taxi company had no duty to advise its drivers not to carry illegally concealed weapons; given that there had been only one incident in twenty years involving a weapon, the court could not "conclude that the risk of harm (injury) to others was foreseeable").  "'Foreseeability is the beginning, not the end, of the analysis in determining the extent of the duty to protect against criminal acts of third parties.'"  *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998) (quoting *Lefmark Management Co. v. Old*, 946 S.W.2d 52, 59 (Tex. 1997) (Owen, J., concurring)).  "[F]oreseeability of the risk is the foremost and dominant consideration."  *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990) (quotations omitted).

There is no evidence in the record that Strake Jesuit had actual knowledge that Beeler was a risk to students.  Nothing in the record suggests that the school received any complaints about Beeler or was aware of any facts suggesting a propensity for sexual abuse.  To the contrary, the declaration of Daniel Lahart, the school's current president, states that "Strake Jesuit's records do not show any complaint about Mr. Beeler of any kind.  Nothing in the files suggests in any way that Strake Jesuit ever received any complaint in any way suggesting that Beeler had engaged in any sexually inappropriate conduct, attempted any sexually inappropriate conduct, made any sexually inappropriate comments, or that Beeler had engaged in any activities with students involving alcohol

---

[4]  The inquiry into "foreseeable risk" is relevant to determining whether the defendant owes a duty. Although foreseeability is also required to establish proximate causation, that is not the focus of this discussion.

or drugs." (Docket Entry No. 29, Ex. A, Lahart Decl., ¶ 6).  Strake Jesuit's personnel file on Beeler is consistent; there are no complaints or reports of inappropriate behavior in the file.   The recollection of Edgar Maresma, the school's president during Beeler's employment, is similar. Maresma stated that Strake Jesuit was not aware of any improper behavior regarding sex, drugs, or alcohol, or of any complaints concerning such behavior.  (*Id.*, Ex. B, Maresma Decl., ¶¶ 5-6).   In short, there is no evidence that, either before or during Beeler's employment, Strake Jesuit knew about any incidents or facts indicating that he presented a risk to students.  And there is no evidence that the school knew about Beeler's alleged assault on Doe before this lawsuit was filed.

Nor does the record disclose any evidence that Strake Jesuit failed to conduct an adequate investigation into Beeler before hiring him.  There is no evidence that had Strake Jesuit conducted a further investigation, it would have learned information indicating that Beeler had a propensity to abuse children.  *See Tichenor*, 32 F.3d at 960 (rejecting the argument that the church or archdiocese was liable for negligence in hiring a priest because"[n]o tangible evidence in the form of a criminal history or discipline exist[ed] that would have been uncovered in a background check."); *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 796-97 (Tex. 2006) (finding nightclub not negligent for failing to investigate employee's background because "nothing would have been found that would cause a reasonable employer not to hire [him]."); *Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 51 (Tex. App.—Fort Worth 2002, no pet) (finding summary judgment for employer improper on the claim that it negligently hired a truck driver because the driver's record, which the employer failed to obtain, included five citations for driving without liability insurance, a noninjury accident, a conviction for driving while intoxicated, a drug conviction, and a charge of driving while intoxicated that was pleaded to reckless conduct).

18

Doe alleges that although Strake Jesuit received no complaints about Beeler before or during his employment at the school, there were sufficient warning signs to put the school on constructive notice that he posed a risk to students.  Doe points to three categories of information that he asserts should have put Strake Jesuit on notice that Beeler had a propensity to sexually abuse students.

First, Doe points out that Beeler knew of his own homosexuality when he began working at Strake Jesuit.  (Docket Entry No. 33 at 7).  Beeler's affidavit states: "Throughout my life, I have been gay.  During my twenties (1970-1980) I was quite active homosexually with men my age." (Docket Entry No. 33, Ex. 2, Beeler Aff. at 2).  Doe argues that "Beeler's own knowledge of his sexual propensities to molest and sexually exploit and abuse boys is imputed to [the] Defendants." (Docket Entry No. 43, ¶ 13).  Beeler does not state in his affidavit that he had had sexual involvements with boys.  Instead, Beeler states that he knew he was gay and that as a young adult had been sexually active with "men my age."  Nor is there any evidence that Beeler disclosed his homosexuality to the administration or faculty at Strake Jesuit.  Doe's argument that Beeler's self-knowledge was "imputed" to Strake and the Provincial Defendants fails as a matter of law.  The Fifth Circuit rejected a similar argument in *Tichenor*, 32 F.3d at 960.  In that case, the plaintiff argued "that the circumstances of [the priest's] relationship and living situation at the rectory, with considerable contact with other pastors and lay personnel, should have made the other priests suspicious" and translated into "constructive knowledge" of the priest's activities on the part of the local Catholic church and the Archdiocese.  The plaintiff relied on the priest's provision of "abundant details of his sexual history" during his deposition, implying that the priest's conduct should have put other priests, and thereby the Archdiocese and the local church, on notice of those activities.  *Id.* at 960 & n. 26.  But the court concluded that merely encountering the priest on a daily

19

basis was not sufficient for constructive notice, even if the priest himself knew of his tendencies, when the record showed that he "was diligent in guarding his secrets"; "did not disclose his extracurricular activities to anyone at anytime in the course of his employment"; and there was "no criminal history or discipline [] that would have been uncovered in a background check." *Id.* at 960.

Beeler's self-knowledge cannot be imputed to Strake Jesuit or the Provincial Defendants. As in *Tichenor*, there were no official complaints or any criminal history from before or during Beeler's employment at Stake Jesuit. The undated offense summary from the Williamson County prosecutor's office states that after the first charges against Beeler were filed,[5] the media covered the story and other children and parents became aware of the allegations against Beeler. This public awareness led other victims to come forward. But the date of the first offense for which Beeler was convicted was December 1, 1994. This is over ten years after Beeler left Strake Jesuit. Information about Beeler's activities, not available until ten years or more after his employment at Strake Jesuit, does not raise a fact issue as to whether the school reasonably should have been aware of propensities for sexually abusing minors before and during that employment. This theory of constructive notice fails as a matter of law.

Second, Doe alleges that "[b]efore 1981 a number of other holy Jesuit servants and educators at Strake Jesuit and in the New Orleans Province of the Society of Jesus were sexually abusing minors." (Docket Entry No. 43, ¶ 20). Doe has neither submitted nor identified evidence to support this allegation. Nor does he present or identify evidence that Strake Jesuit knew of such incidents. And the existence of sexually abusive Jesuit teachers does not give rise to an inference that Strake

---

[5] The document does not state when these charges were filed but Beeler's offense record places his first offense in December 1994.

Jesuit or the Provincial Defendants had constructive knowledge that Beeler had a propensity to sexually abuse students.  The argument Doe raises is similar to that raised, and rejected, in *Williams v. United States Pentecostal Church International,* 115 S.W.3d 612, 615-16 (Tex. App.—Beaumont 2002, no pet.).  In *Williams*,  church program participants alleged negligence by their local church and affiliated district and international church organizations in failing to prevent alleged sexual abuse of three underage girls by a church leader.  The plaintiffs submitted an affidavit of an expert witness opining that "'all of the Defendants in this case knew or should have known of the risks of sexual abuse and exploitation of minors in church programs'" and an affidavit of a superintendent of the church program acknowledging that "there's always a risk" that those with authority over minors will engage in sexual abuse of minors.  *Id.* at 615-16.  The plaintiff contended that this evidence showed that the church leader's conduct was foreseeable.  *Id.*  The court rejected this argument, concluding that "general knowledge that such abuses occur" could not support "foreseeability in this particular instance." *Id.* at 616.  In the present case, there is no basis to infer from general knowledge that such abuse can occur constructive knowledge that Beeler was likely to engage in such abuse.

Doe has submitted no evidence to support an inference that Strake Jesuit or the Provincial Defendants had actual or constructive knowledge that Beeler posed a risk to minors.  The absence of a foreseeable risk leads to summary judgment as to the claims that the defendants negligently assigned or employed Beeler; failed to warn of Beeler's propensities; failed to supervise Beeler; failed to investigate Beeler; negligently retained Beeler; failed to limit Beeler's unsupervised access to students; and failed to exercise reasonable care before 1981.

The three remaining theories of negligence also fail.  The first is based on section 302B of the *Restatement (Second) of Torts*.  That section provides that "[a]n act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal."  RESTATEMENT (SECOND) OF TORTS § 302B.  The record establishes that, as a matter of law, the defendants had neither actual nor constructive knowledge that Beeler presented a risk of harm to the Strake Jesuit students he taught.  The claim based on section 302B fails as a matter of law.

The second claim, under section 311 of the *Restatement*, is that the defendants negligently misrepresented the risk of harm to Doe.  This claim requires that a defendant "negligently gives false information" in a situation where harm results to the listener or to a person who the defendant "should expect to be put in peril."  RESTATEMENT (SECOND) OF TORTS § 311.  Because the record shows, as a matter of law, that the defendants had no basis to believe that Beeler presented a foreseeable risk of harm to students at Strake Jesuit, this claim also fails as a mater of law.

The final theory is that the defendants negligently failed to report Beeler as a child abuser.  To the extent this is a negligence *per se* claim based on an alleged violation of the Texas child abuse reporting statute, TEX. FAM. CODE 261.101, it fails as a matter of law.  As this court has explained, in *Perry v. S.N.*, 973 S.W.2d 301 (Tex. 1998), the Supreme Court of Texas specifically rejected negligence *per se* and gross negligence claims under the State's child abuse reporting statutes.  *See Doe I*, No. 05-1047, slip op. at 22 (Mar. 27, 2006) (citing *Perry*, 973 S.W.2d at 308-09).  The *Perry* court explicitly stated that its holding applied to all negligence *per se* claims predicated on conduct that allegedly breaches the Texas Family Code requirement that individuals who witness child abuse

must report it.  *See id*.  To the extent this is an ordinary negligence claim, it fails because there is no common-law duty to report child abuse.  In a later opinion in the *Doe I* case, this court engaged in an *Erie-* guess analysis and concluded that the Texas courts would not impose a common-law duty to report child abuse.  *Doe I*, No. 05-1047, 2007 WL 2817999, at *28-33 (S.D. Tex. September 27, 2007).  The parties do not point to—and research does not reveal—any case law developments that change this analysis.  As in *Doe I*, this court declines to create a duty that the Texas courts have not recognized.  And even if there were such a duty—whether under the common law or statute—the defendants would have had no duty to report Beeler because they had no actual or constructive knowledge of his abuse of Doe or anyone else.

As a matter of law, Doe has failed to show that the defendants were negligent. Both Strake Jesuit and the Provincial Defendants are entitled to summary judgment on Doe's negligence claims.

### 2.    *Fraud and Concealment*

Under Texas law, fraud has six elements: (1) the defendant made a material representation; (2) the representation was false; (3) when the representation was made, the defendant knew it was false or made it recklessly, as a positive assertion, and without any knowledge of the truth; (4) the defendant made the statement with the intent that the plaintiff would rely on it; (5) the plaintiff acted in reliance on the representation; and (6) the representation caused the plaintiff injury.  *See In re FirstMerit Bank*, 52 S.W.3d 749, 758 (Tex. 2001) (citing *Formosa Plastics Corp. v. Presidio Engrs. & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)).

Doe alleges that the defendants "stated and/or represented numerous falsehoods, including the fact that Beeler was a man of good moral character, fit to be a holy Jesuit servant and educator in the Roman Catholic Church, who could be entrusted with the care, counseling, teaching, and

instruction of adolescent children."   (Docket Entry No. 43, ¶ 42).   There is no more specific allegation of any statement that any defendant made.   Doe cannot succeed on a fraud claim against any of the defendants.   Even assuming that one of the defendants made a representation about Beeler's fitness, Doe cannot show that the defendant knew that such a representation was false or was reckless as to whether it was true or false.   The defendants did not know or have reason to know that there was a risk Beeler would molest a student.

The fraudulent concealment claim fails as well.   A defendant may be held liable for failing to disclose material facts that it has a duty to communicate.   *See Bradford v. Vento*, 48 S.W.3d 749, 754-55 (Tex. 2001); *Insurance Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674-75 (Tex. 1998).   The record does not support an inference that any of the defendants had actual or constructive knowledge of information about Beeler posing a risk to students at Strake Jesuit.   The record provides no evidence that the defendants had any information that could impose a duty of disclosure.

The defendants are entitled to summary judgment on the fraud and concealment claims.

### 3.     *Breach of Fiduciary Duty*

Doe alleges that he had a fiduciary relationship with all of the defendants and that they breached their fiduciary duties by failing to make full disclosures about Beeler's propensities and by making misrepresentations about the risk Beeler presented.   (Docket Entry No. 43, ¶¶ 40, 50).   The elements of the breach of fiduciary duty claim are that: (1) there was a fiduciary relationship between Doe and the defendant; (2) the defendant breached the fiduciary duty; and (3) the breach resulted in injury to Doe or benefit to the defendant.   *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied).   Certain relationships, such as an attorney-client relationship, give rise to a fiduciary duty.   *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005) (per curiam).   A fiduciary duty

may also arise from "'a moral, social, domestic or purely personal relationship of trust and confidence.'" *Id.* (quoting *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998)). Failure to disclose material facts may breach fiduciary duties. *See Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988) ("As a fiduciary, an attorney is obligated to render a full and fair disclosure of facts material to the client's representation.").

Without deciding whether any of the defendants had a fiduciary relationship with Doe, this claim fails as a matter of law. The record provides no basis for inferring that the defendants had actual or constructive knowledge of material facts that they had a duty to disclose. Nor does the record provide a basis for inferring that the defendants made a false statement with the requisite knowledge of or recklessness as to its falsity. There is no evidence that Strake Jesuit conducted an improper investigation before hiring Beeler and failed to learn material information showing that he had a propensity to molest students. None of Beeler's criminal charges involve incidents before 1994. There is no evidence of any complaint or report about sexually inappropriate behavior with minors before 1994. It appears that Doe did not tell anyone about his encounters with Beeler until long after Beeler left Strake Jesuit. Nothing in the record shows that Strake Jesuit or the Provincial Defendants abused Doe's trust and confidence in a way that could have been prevented by candor or diligence. The breach of fiduciary duty claim fails as a matter of law.

### 4.    *Intentional Infliction of Emotional Distress*

Under Texas law, the elements of a claim for intentional infliction of emotional distress are that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the actions caused the plaintiff emotional distress; and (4) the emotional distress was severe. *Kroger Tex. L.P. v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006) (citing *Hoffmann-La Roche*

*Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004); *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 740 (Tex. 2003)).  The Supreme Court of Texas has characterized  this claim as a "'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress."  *Hoffman-LaRoche*, 144 S.W.3d at 447.

Doe's complaint does not refer to any particular actions by the defendants that were intentional or reckless.  The record does not disclose any conduct that would meet either description. Doe has not raised a fact issue as to whether any of the defendants' actions were negligent, much less reckless or intentional.  The claim for intentional infliction of emotional distress fails as a matter of law.

> ### 5.     *Civil Conspiracy*

Doe alleges that Beeler, Strake Jesuit, the Provincial Defendants, and other Roman Catholic institutions in the United States conspired to conceal Beeler's sexual abuse of minors in order to avoid prosecution and civil liability.  Doe alleges that the conspiracy was carried out using false representations and material omissions.  (Docket Entry No. 43, ¶¶ 24-29).  The Supreme Court of Texas has explained that civil conspiracy has five elements: (1) two or more persons; (2) with an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result.  *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005); *see also Firestone Steel Products Co. v. Barajas*, 927 S.W. 2d 608, 614 (Tex. 1996) ("In Texas, a civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.").  The defendants focus on the second and third elements, arguing that they could not have reached an agreement with anyone to conceal

information about Beeler's behavior because they did not have any actual or constructive information about Beeler behaving improperly.

There is no evidence in the record that either the Provincial Defendants or Strake Jesuit was actually or constructively aware of any complaints or reports about Beeler's sexually inappropriate actions towards minors before or during Beeler's employment at Strake Jesuit. There is no evidence that before or during that period, the defendants were actually or constructively aware of any other facts suggesting that Beeler had a propensity to sexually abuse students. The defendants could not have conspired to conceal facts that were not within their knowledge. *Barajas*, 927 S.W.2d at 614 ("One cannot agree, expressly or tacitly, to commit a wrong about which he has no knowledge."). Doe's civil conspiracy claim fails as a matter of law.

> 6.   *Gross Negligence*

Doe alleges that the defendants are liable for gross negligence because they acted with "heedless and reckless disregard for [Doe's] safety, which disregard was the result of conscious indifference to [Doe's] rights, welfare, and safety." (Docket Entry No. 43, ¶ 45). In Texas, gross negligence is defined by statute as an act or omission that, "when viewed objectively from the standpoint of the actor at the time of its occurrence involves and extreme degree of risk . . . of which the actor has actual, subjective awareness . . . but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others." TEX. CIV. PRAC. & REM. CODE § 41.001(11); *see also Coastal Transport, Inc. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 231 (Tex. 2004). Gross negligence is relevant to exemplary damages. *Potharaju v. Jaising Maritime, Ltd.*, 193 F. Supp.2d 913, 920 (E.D. Tex. 2002). Recovery of actual damages is generally a prerequisite to recovering exemplary damages. *Nabours v. Longview Savings & Loan. Assn.*, 700 S.W.2d 901, 904-05 (Tex.

1985).

Because the undisputed summary judgment evidence shows that as a matter of law, Doe cannot recover actual damages, he is not entitled to exemplary damages.   The undisputed evidence also shows that, as a matter of law, Doe would not be able to satisfy his burden to show gross negligence by clear and convincing evidence.  *See* TEX. CIV. PRAC. & REM. CODE § 41.003.  Doe has not raised a fact issue as to whether either defendant was negligent.   The undisputed facts in the summary judgment record show that, as a matter of law, it was not reasonably foreseeable to the defendants either before or during Beeler's employment that he posed a risk to students, let alone an "extreme" risk.   The second element requires proof that the defendants had subjective knowledge that Beeler presented a risk.   There is no such evidence in the record.   Doe's gross negligence argument fails as a matter of law.

The defendants are entitled to summary judgment on the merits of Doe's claims.

## C.      The Statute of Limitations

Strake Jesuit has also moved for summary judgment on the basis of limitations.   The limitations periods applicable to Doe's claims range between two and five years.   His negligence, gross negligence, civil conspiracy, and intentional infliction of emotional distress claims are governed by the two-year statute of limitations for personal injury claims.   TEX. CIV. PRAC. & REM. CODE § 16.003.   The fraud, concealment, and breach of fiduciary duty claims have a four-year limitations period.   TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4), (5).   The statute of limitations for a personal injury suit based on sexual assault is five years.   TEX. CIV. PRAC. & REM. CODE § 16.0045.   This five-year limitations period clearly applies to the vicarious liability claims. The five-year limitations period may apply to other claims as well, particularly the direct liability claims that the defendants'

negligence allowed the alleged abuse to occur. In interpreting section 16.0045, this court has previously concluded that "the Texas Supreme Court would join the majority of state courts considering similar statutes and hold that the limitations period of Section 16.0045 applies to claims against nonperpetrators of sexual abuse as well as to claims against alleged perpetrators." *Doe I v. Roman Catholic Diocese of Galveston-Houston*, No. 05-1047, slip op. at 21 (S.D. Tex. Mar. 27, 2006).

The limitations issue in this case does not hinge on the length of any particular statute of limitations but instead on the date on which Doe's claims accrued. "For purposes of the application of limitation statutes, a cause of action can generally be said to accrue when the wrongful act effects an injury, regardless of when the plaintiff learned of such injury." *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990) (citing *Robinson v. Weaver*, 550 S.W.2d 18, 19 (Tex. 1977)). When the claim accrues, the limitations period begins to run. Under Texas law, however, plaintiffs who are younger than 18 when their claim accrues are considered to be under a legal disability. The statute of limitations is tolled until such a plaintiff turns 18, when the disability ends. TEX. CIV. PRAC. & REM. CODE 16.001. Doe turned 18 on April 27, 1984. The two-year limitations periods would have expired in 1986, the four-year periods in 1988, and the five-year period in 1989. Doe filed suit in 2009.

The issue is whether the discovery rule applies. Under that rule, a cause of action does not accrue—and the statute of limitations is tolled—until the "plaintiff discovers, or through the exercise of reasonable care and diligence should discover, the nature of his injury." *Moreno*, 787 S.W.2d at 351 (citing *Weaver v. Witt*, 561 S.W.2d 792, 793-94 (Tex. 1977)). The Texas Supreme Court has applied the discovery rule when "'the nature of the injury incurred is inherently undiscoverable and

29

the evidence of injury is objectively verifiable.'" *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996).  "An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex. 1996).

Because Doe seeks to benefit from the discovery rule, he "bear[s] the burden of proving and securing favorable findings thereon." *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex. 1988).  In Texas state courts, on a summary judgment motion, the burden shifts to the moving party to negate the discovery rule by showing the absence of any fact issue as to when the plaintiff discovered or should have discovered the claim. *Id.* at 518 n. 2.  But the Fifth Circuit has found that to be a procedural rule inapplicable in a federal case. *FDIC v. Shrader & York*, 991 F.2d 216, 220 (5th Cir. 1993).  In federal court, the nonmoving party still "[bears] the burden of producing some summary judgment evidence in support of its discovery rule argument." *Id.*  Doe must identify or present evidence showing that his claims are inherently undiscoverable and objectively verifiable.

Strake Jesuit does not argue the "inherently undiscoverable" issue in its summary judgment motion.  Instead, Strake Jesuit focuses on the argument that Doe's claims are not objectively verifiable, citing the Texas Supreme Court's decision in *S.V.*, 933 S.W.2d at 1.  (Docket Entry No. 29 at 10).  In *S.V.*, the Texas court assumed—without deciding—that a father's sexual abuse of his child was inherently undiscoverable because of the "special relationship between parent and child" and evidence "that some traumas are by nature impossible to recall for a time. *Id.* at 8.  In analyzing the objectively verifiable element, the court found that the only evidence to support the plaintiff's allegations were "her symptoms and to a lesser extent her behavioral traits, as described by her and the experts who testified on her behalf." *Id.* at 15.  This evidence was inconclusive.  "The experts

testified that [the plaintiff's] symptoms could have been caused by other things than sexual abuse by her father." *Id.*  And while the father "had many of the characteristics of a sex abuser, he did not match a characteristic profile, and even if he had, it would not prove that he abused [the plaintiff]." *Id.*  The Texas Supreme Court concluded that there was "no physical or other evidence in [the] case to satisfy the element of objective verifiability for application of the discovery rule." *Id.*  The court identified the types of evidence that would be sufficient:

> The kinds of evidence that would suffice would be a confession by the abuser; a criminal conviction; contemporaneous records or written statements of the abuser such as diaries or letters; medical records of the person abused showing contemporaneous physical injury resulting from the abuse; photographs or recordings of the abuse; an objective eyewitness's account; and the like.  Such evidence would provide sufficient objective verification of abuse, even if it occurred years before suit was brought, to warrant application of the discovery rule.

*Id.*  Expert testimony, the court noted, is generally not sufficient.  The court did acknowledge a possibility that "recognized expert opinion on a particular subject would be so near consensus that, in conjunction with objective evidence not based entirely on the plaintiff's assertions, it could provide the kind of verification required."  *Id.*

In this case, Doe has offered no such expert testimony.[6]  He has not offered a confession by Beeler, a criminal conviction of Beeler for the abuse, contemporaneous written records or statements, medical records, photographs or recordings, or an eyewitness account.  He has not even offered his own account aside from the allegations in the complaint, which are not competent summary judgment evidence.  In his brief, Doe does not identify any summary judgment evidence providing objective

---

[6] Doe has offered the expert testimony of Patrick J. Wall, (Docket Entry No. 24, Ex. A), and Thomas P. Doyle, (Docket Entry No. 51, Ex. A).  These witnesses offer information and opinions primarily concerning the history and governance of the Jesuit order and the Roman Catholic Church.  None of the experts offer testimony about the facts of Beeler's alleged abuse or Doe's physical or psychological condition.

verification.  In his complaint, Doe alleges that his "claims are objectively verifiable by the sexual

abuse of six (6) other known male victims of" Beeler.  (Docket Entry No. 43, ¶ 62).  But the abuse

for which Beeler has been criminally convicted occurred more than ten years after the alleged abuse

of Doe.  Under the Texas Supreme Court's standard, Beeler's conviction for abusing children in and

after 1994 does not provide objective verification that he sexually abused Doe in the early 1980s.

Because the claims are not objectively verifiable, Doe is not entitled to rely on the discovery rule.

Doe also argues that he is entitled to two forms of equitable tolling.  The first is based on

fraudulent concealment.  Doe contends that Strake Jesuit concealed "Beeler's crimes and predatory

nature against children" as well as the school's own negligence in hiring, retaining, and supervising

Beeler.  (Docket Entry No. 33 at 10).  The Texas Supreme Court has described this basis for tolling

limitations, as follows:

> Fraudulent concealment is based upon the doctrine of equitable
> estoppel. In the proper case, invocation of fraudulent concealment
> estops a defendant from relying on the statute of limitations as an
> affirmative defense to plaintiff's claim. Where a defendant is under
> a duty to make disclosure but fraudulently conceals the existence of
> a cause of action from the party to whom it belongs, the defendant is
> estopped from relying on the defense of limitations until the party
> learns of the right of action or should have learned thereof through
> the exercise of reasonable diligence.

*Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983).  "The estoppel effect of fraudulent concealment

ends when a party learns of facts, conditions, or circumstances which would cause a reasonably

prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause

of action."  *Id.*

Doe's argument that the fraudulent concealment doctrine applies to him has been foreclosed

by the Texas Supreme Court in *S.V.*, 933 S.W.2d at 8.  In that case, the court noted that the plaintiff

had not alleged fraudulent concealment but concluded that such an argument would have been unsuccessful.  The plaintiff "was not deceived into thinking that she was not being abused when she was.  To the contrary, [the plaintiff's] contention is that she was fully aware of the episodes of abuse, so painfully so that she repressed all memory of them for years." *Id.*  Doe's argument is similar to the argument in *S.V.*  Doe's complaint describes Beeler's abuse in detail.  Doe alleges that he was so "confused about the sexual nature of the encounters with his jazz band director and was ashamed and traumatized by what Beeler had done to him" that he "suppressed and/or repressed the abuse until June 2008."  (Docket Entry No. 43, ¶ 12).  Doe does not allege that he was deceived into thinking that he was not abused.  Instead, like the plaintiff in *S.V.*, Doe was so fully and painfully aware of the abuse that he suppressed the memories.  The Texas case law on fraudulent concealment precludes its application in this case.

The second form of equitable tolling Doe asserts is ordinary equitable estoppel.  Although this is related to fraudulent concealment, it is broader in scope; Doe's inability to invoke fraudulent concealment does not foreclose equitable estoppel.  *See Doe v. Linam*, 225 F. Supp. 2d 731, 736-37 (S.D. Tex. 2002) (citing *Neeley v. Bankers Trust Co. of Texas*, 757 F.2d 621, 632 (5th Cir. 1985) ("Therefore, a party's failure to make out the narrower defense of fraudulent concealment does not necessarily prevent him from prevailing on the more general defense of equitable estoppel.").

"A party estops himself from asserting limitations where he misrepresents facts, and the other party reasonably relies on the untrue representations in postponing legal action until after the limitation period expires." *Neeley*, 757 F.3d at 632.  The party to whom the misrepresentation was made "must have been without knowledge or the means of knowledge of the real facts." *Gulbenkian v. Penn*, 252 S.W.2d 929, 932 (Tex. 1952); *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483,

33

489 (Tex. 1991) (citing *Gulbenkian*, 252 S.W.2d at 932).  There is no evidence in the record that Strake Jesuit or the Provincial Defendants made any untrue representations or concealed information they knew about Beeler.  And, based on his own allegations, Doe knew or had the means to know what had happened to him.

Doe's final limitations argument is that his "mental conditions of unsound mind and repressed/suppressed memory" qualified as a legal disability, triggering the Texas statute to toll limitations.  (Docket Entry No. 33 at 13).  Section 16.001 of the Texas Civil Practice & Remedies Code provides that a statute of limitations is tolled during the period that a person is "of unsound mind" if that disability was present when the cause of action accrued.  *Id.*  Doe has not identified or presented any competent summary judgment evidence that he was of "unsound mind" when the cause of action accrued.  There is no testimony from Doe or his parents, no expert testimony concerning Doe's condition, and no medical record of his condition.  All he has offered are allegations in the complaint, which are not competent summary judgment evidence.  Doe has not raised a genuine issue of fact material to determining whether he was of unsound mind.  *See American Petrofina, Inc. v. Allen*, 887 S.W.2d 829, 830 (Tex. 1994) (holding that party seeking to toll the statute of limitations must raise a fact issue in order to avoid summary judgment); *Rodriguez v. Crowell*, — S.W.3d —, 2009 WL 4921661, at *2 (Tex. App.—El Paso 2009, no pet. h.) ("If the movant establishes that the statute of limitations bars the action, the non-movant must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations.").

Doe's claims against Strake Jesuit are barred by limitations.

## IV.     Conclusion

This court grants both motions for summary judgment.  Based on this result, the other pending motions are denied as moot.  Final judgment is entered by separate order.

SIGNED on January 22, 2010, at Houston, Texas.

Lee H. Rosenthal
United States District Judge