**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JOHN DOE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-1059 |
| | § | |
| | § | |
| CATHOLIC SOCIETY OF RELIGIOUS | § | |
| and LITERARY EDUCATION, d/b/a, | § | |
| JESUITS OF THE NEW ORLEANS | § | |
| PROVINCE, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

In this personal injury suit, John Doe has sued Strake Jesuit, a Catholic high school he attended in the early 1980s. He has also sued the Jesuits of the New Orleans Province and the Province's chief priest (together the "Provincial Defendants"). Doe alleges that he was sexually assaulted by Glen Beeler, who was a lay faculty member at Strake Jesuit from January 1981 until June 1983. On January 22, 2010, this court granted the defendants' motions for summary judgment and entered a final judgment dismissing the case with prejudice. (Docket Entry Nos. 60, 61). Doe has filed a "Motion for New Trial" based on additional evidence that he has now submitted. (Docket Entry No. 62). Doe has not challenged this court's holding that the defendants are not vicariously liable for Beeler's assault. Nor has he challenged the holding that the Provincial Defendants cannot be held vicariously liable for Strake Jesuit's negligence, if any. Doe's motion addresses two issues. The first is whether Strake Jesuit investigated Beeler's fitness for his teaching job and, if not, whether a proper investigation would have revealed information suggesting that Beeler was a threat

to students. The second is whether there is a basis for tolling the statute of limitations based on Doe's repressed memory of Beeler's abuse. Strake Jesuit, (Docket Entry No. 64), and the Provincial Defendants, (Docket Entry No. 53), have responded, and Doe has replied, (Docket Entry No. 65).

## I.     The Legal Standard

The parties agree that Doe's motion should be treated as a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). A Rule 59(e) motion "'calls into question the correctness of a judgment.'" *Templet v. Hydrochem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004) (quoting *In re TransTexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). "A motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863-64 (5th Cir. 2003) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir.1990)). Relief is also appropriate when there has been an intervening change in the controlling law. *Schiller v. Physicians Resource Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

"Rule 59(e) permits a court to alter or amend a judgment, but it '"may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *Exxon Shipping Co. v. Baker*, --- U.S. ----, 128 S. Ct. 2605, 2617 n.5 (2008) (quoting 11 CHARLES A. WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2810.1, at 127-128 (2d ed.1995) (footnotes omitted)). "A motion to reconsider based on an alleged discovery of new evidence should be granted only if '(1) the facts discovered are of such a nature that they would probably change the outcome; (2) the facts alleged are actually newly discovered and could not have been discovered earlier by proper diligence; and (3) the facts

are not merely cumulative or impeaching.'" *Johnson v. Diversicare Afton Oaks, LLC*, --- F.3d ----, 2010 WL537756, at *4 (5th Cir. Feb. 17, 2010) (quoting *Infusion Res., Inc. v. Minimed, Inc*., 351 F.3d 688, 696-97 (5th Cir. 2003) (citation omitted)).  The Fifth Circuit warns that altering, amending, or reconsidering a judgment under Rule 59(e) is an extraordinary remedy that courts should use sparingly.  *Templet*, 367 F.3d at 479; *see also* 11 WRIGHT, MILLER, & KANE § 2810.1, at 124.  The Rule 59(e) standard "favor[s] denial of motions to alter or amend a judgment."  *S. Constructors Group, Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993).

**II.   Analysis**

Doe has submitted the following new evidence: (1) the February 9, 2010 affidavit of Judy S. McEnany, a person Beeler had listed as a reference on his Strake Jesuit employment application, (Docket Entry No. 62, Ex. A); (2) the December 9, 2009 deposition on written questions completed by Susan Burk-Stapp, the Custodian of Records for First Presbyterian Church, which Beeler listed on his Strake Jesuit application as a prior employer, (*Id.*, Ex. B); (3) the February 15, 2010 affidavit of Leslie Guest, who states that he and his brothers were sexually assaulted by Beeler in the 1970s, as well as a 2004 police report that Guest's mother made relating to her sons when she heard Beeler had been arrested, (*Id.*, Ex. C); (4) the February 16, 2010 affidavit of Dr. Harvey Rosenstock, a psychiatrist who evaluated the plaintiff twice in the summer of 2009, (*Id.*, Ex. D); (5) the February 17, 2010 affidavit of Doe, authenticating an attached letter and book inscription Beeler wrote to Doe in the mid 1980s, (*Id.*, Ex. E); and (6) the February 19, 2010 affidavit of Dr. Matthew Ferrara, a psychologist who evaluated Beeler in 2000, including the report of Ferarra's clinical evaluation of Beeler signed November 30, 2000.  (*Id.*, Ex. F).

All this evidence could have been (or was) obtained before summary judgment was granted on January 22, 2010. Each item of evidence is examined below.

- Judy McEnany's affidavit: Doe has known that McEnany was a reference listed on Beeler's application since Strake Jesuit produced the application on June 10, 2009. (Docket Entry No. 64, Ex 1, Conway Decl., ¶ 2). Doe could have obtained her affidavit well before judgment.

- The deposition on written questions from the First Presbyterian Church: Dow obtained this exhibit over a month before the summary judgment motions were decided and could have obtained it earlier. This exhibit could have been submitted as a supplement to the summary judgment record. The church was listed as a previous employer on the employment application Strake Jesuit produced to Doe on June 10, 2009.

- Leslie Guest's affidavit: The 2004 police report, based on Leslie Guest's mother's complaint, was in a set of documents sent to Doe by the Williamson County District Attorney's Office on July 29, 2009. (*Id.*, ¶ 3). On September 11, 2009, Doe produced the report to Strake Jesuit. (*Id.*). Doe argues that "[w]hile the documents leading to Leslie Guest were available to Plaintiff in July 2009, Mary English's death which apparently occurred after the fact caused a substantial delay in locating her son, Leslie Guest." (Docket Entry No. 65 at 2). Doe has not explained the extent of any delay. He did not file a Rule 56(f) motion asking for time to locate Guest before this court decided the summary judgment motions. Nor does Doe state that this delay was so long that he only located Guest after judgment was entered. To the contrary, Strake Jesuit has pointed to statements Doe's counsel made suggesting that Doe was aware of the Guest incident before judgment was

entered. The record shows that the facts supplied by Guest could have been obtained before the judgment with reasonable diligence. It is unlikely that Doe diligently attempted to obtain Guest's affidavit with no success for six months, only to find him and obtain the affidavit from him within approximately three weeks after this court's judgment.

- Dr. Rosenstock's affidavit: Dr. Rosenstock saw Doe on two occasions, July 30, 2009 and August 3, 2009. Dr. Rosenstock provided an expert report on August 5, 2009. (Docket Entry No. 64, Ex. 1, Conway Aff., ¶ 5). Doe could have submitted the evidence contained in Dr. Rosenstock's affidavit long before this court entered judgment.

- Doe's affidavit and the attached notes from Beeler written in 1984 and 1985: These notes have been in Doe's possession since 1984 and 1985. Doe easily could have submitted them before entry of judgment.

- Dr. Ferrara's affidavit and his evaluation of Beeler from 2000: The evaluation is not "newly discovered." Doe obtained Dr. Ferrara's report in the July 29, 2009 set of documents sent by the Williamson County District Attorney's Office. Doe also produced it to Strake Jesuit on September 11, 2009. (*Id.*, ¶ 3). Doe could have submitted the Ferrara report well before entry of judgment. The affidavit does no more than authenticate that report.

None of the evidence submitted by Doe contains "newly discovered" facts that he could not have obtained before entry of judgment by reasonable diligence. The Rule 59(e) motion could be denied for this reason alone. Even if these facts were properly considered, they would not provide any basis for modifying the rulings in the January 22 Memorandum and Order.

The newly submitted evidence does not raise a fact issue precluding summary judgment on Doe's direct liability claims. In the January 22 Memorandum and Order, this court held that the

Provincial Defendants had no duty to investigate Beeler, there was no evidence that Strake Jesuit's investigation was insufficient, and there was no evidence that a more thorough investigation would have revealed any information suggesting Beeler was a risk to sexually assault students. Doe now argues that McEnany's affidavit and the deposition on written questions show that Strake Jesuit's investigation of Beeler was inadequate. He also argues that Guest's affidavit demonstrates that information was available that Strake Jesuit would have uncovered in a thorough investigation. He argues that had Strake Jesuit contacted McEnany, who Beeler listed as a reference, it "would have learned what Judy McEnany knew about Beeler's work at various local churches. Upon inquiring further, Strake Jesuit could have discovered Calvery Church where Beeler was terminated in 1975 after [Guest's mother] reported Beeler's sexual advances against her boys to Calvery's pastor." (Docket Entry No. 62 at 6). This argument is unpersuasive. McEnany does not state that Strake Jesuit failed to contact her about Beeler, only that she does not remember being called by anyone from the school. On Beeler's Strake Jesuit job application form someone has made a check mark next to three of his four listed references, including McEnany, suggesting that Strake Jesuit did in fact contact McEnany. More importantly, it is not clear that speaking to McEnany could have led Strake Jesuit to discover the information reported to Calvery Church by Guest's mother. McEnany's affidavit says only that Beeler had "mentioned working at churches in the Houston area." (*Id.*, Ex. A, McEnany Aff., ¶ 1). McEnany does not state that she knew Beeler had been employed at Calvery, that she had any other information about his employment at that church, or that she had any information suggesting that hiring Beeler was a risk. Beeler did not list Calvery as a prior employer on his application. The only church he listed was First Presbyterian, which stated in responding to the deposition on written questions that it had no documents relating to Beeler. And there is no

6

evidence of any other means by which Strake Jesuit could have learned of the events described by Guest in his affidavit. Guest does not state that these events were part of a public record or that anyone was ever informed about the incidents aside from his mother and the Calvery priest. Even if this newly submitted evidence was properly considered, it would not "probably change the outcome" of this court's rulings on the merits of Doe's claims.

The second set of arguments based on the new evidence relates to the statute of limitations. Doe argues that the evidence supports his argument that this court should apply the "discovery rule" to toll limitations until the time his repressed memories were recovered and he "discovered" that he had been abused. Doe argues that Dr. Rosenstock's affidavit establishes that his injury was inherently undiscoverable, one of the requirements for applying the discovery rule. *See Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996). But in the January 22 opinion, this court assumed, without deciding, that Doe's injury was inherently undiscoverable. This court declined to apply the discovery rule only because there was no objective proof of Doe's injury, the second requirement for applying the rule. *See id.*

Doe argues that he has now provided such objective evidence in Dr. Rosenstock's affidavit. The affidavit states that Doe's symptoms are consistent with a person who was sexually abused as a child and that his behavior is consistent with the behavior of Beeler's other victims. But, as explained in the January 22 opinion, the Texas Supreme Court has clearly delineated what sorts of evidence can serve as objective verification of an injury. It stated in *S.V. v. R.V.*, 933 S.W.2d 1, 15 (Tex. 1996):[1]

---

[1] The *Childs* case cited by Doe does not undercut *S.V.* That case dealt with inherent undiscoverability, not objective verifiability. *See Childs v. Haussecker*, 974 S.W.3d 31 (Tex. 1998).

7

> The kinds of evidence that would suffice would be a confession by the abuser; a criminal conviction; contemporaneous records or written statements of the abuser such as diaries or letters; medical records of the person abused showing contemporaneous physical injury resulting from the abuse; photographs or recordings of the abuse; an objective eyewitness's account; and the like. Such evidence would provide sufficient objective verification of abuse, even if it occurred years before suit was brought, to warrant application of the discovery rule.

Expert testimony might, the court suggested, be sufficient, but only if "recognized expert opinion on a particular subject [became] so near consensus that, *in conjunction with objective evidence* not based entirely on the plaintiff's assertions, it could provide the kind of verification required.." *Id.* (emphasis added). No such evidence is present here. The notes that Doe received from Beeler are insufficient. Although they are not inconsistent with Doe's story, they are not evidence of its truth. And importantly, the *S.V.* court specifically held that expert opinions about repressed memory, which is what Dr. Rosenstock has offered, "simply cannot meet the 'objective verifiability' element for extending the discovery rule." *Id.* at 19-20. In short, no new evidence has been provided that would affect the conclusion in the original Memorandum and Order that "because the claims are not objectively verifiable, Doe is not entitled to rely on the discovery rule." (*See* Docket Entry No. 60 at 32).[2]

## III.   Conclusion

---

[2] Doe does not argue in his Rule 59(e) motion that this court was incorrect to reject his argument that the statute of limitations should be tolled because he was "of unsound mind" when the cause of action accrued. (See Docket Entry No. 60 at 34 (citing Tex. Civ. Prac. & Rem. Code § 16.001)). In any event, Dr. Rosenstock's affidavit does not reach a conclusion that Doe was of unsound mind at the time he was abused by Beeler. The affidavit identifies psychological difficulties that Doe had as a result of his experiences with Beeler, including receiving treatment several years later. This is insufficient to qualify as "unsound mind," which would require mental incapacity, not just psychological difficulty. *See Eber v. Harris Cty. Hosp. Dist.*, 130 F. Supp. 2d 847, 871 (S.D. Tex. 2001) ("Generally, the term 'unsound mind' refers to a legal disability, although it is not limited to persons who are adjudicated incompetent."); *Nelson v. Reddy*, 898 F. Supp. 409 (N.D. Tex. 1995) ("Although the term 'unsound mind' is not defined in the [statute], 'in general, 'persons of unsound mind' and 'insane persons' are synonymous.'" (quoting *Hargraves v. Armco Foods, Inc.*, 894 S.W.2d 546, 547 (Tex.App.–Austin 1995, no writ)).

Doe's motion to alter or amend the judgment is denied.

SIGNED on April 5, 2010, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge